# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLLABO INNOVATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-197-JFB-SRF |
| ) | |
| OMNIVISION TECHNOLOGIES, INC., ) | **UNDER SEAL** |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

At Wilmington this 17th day of **May, 2018**, the court having considered the parties' discovery dispute submissions, supplemental briefing and the arguments presented during the September 25, 2017 discovery dispute hearing, the November 15, 2017 oral argument, and the May 9, 2018 supplemental hearing (D.I. 94; D.I. 95; D.I. 106; D.I. 109; D.I. 115; D.I. 121; D.I. 124; D.I. 198; D.I. 200; 9/25/17 Tr.; 11/15/17 Tr.; 5/9/18 Tr.), IT IS HEREBY ORDERED THAT plaintiff Collabo Innovations, Inc.'s ("Collabo") motion to compel foreign sales discovery from defendant OmniVision Technologies, Inc. ("OmniVision") is GRANTED-IN-PART.

1.  **Background.** Collabo filed suit against OmniVision on March 29, 2016, alleging that OmniVision makes, uses, offers to sell, and/or imports into the United States semiconductor devices, including complementary metal-oxide semiconductor ("CMOS") image sensors, which allegedly utilize technologies covered by the patents-in-suit. (D.I. 1 at ¶ 11) Collabo filed its first amended complaint on June 3, 2016, alleging that OmniVision infringes U.S. Patent Nos. 7,411,180 ("the '180 patent"), 8,592,880 ("the '880 patent"), 7,944,493 ("the '493 patent"), 7,728,895 ("the '895 patent"), and 8,004,026 ("the '026 patent") (collectively, the

"patents-in-suit"). (D.I. 14) The patents-in-suit are directed to semiconductor devices, such as CMOS image sensors and related technologies, which are incorporated into mobile handsets, tablets, automotive cameras, and gamepads. (D.I. 14 at ¶¶ 11-51)

2. On July 19, 2016, this action was referred by Judge Robinson for all motions to dismiss, amend, transfer, and any discovery motions permitted. (D.I. 24) OmniVision served its invalidity contentions on December 9, 2016. (*Id.* at ¶ 1(c)(6))

3. On January 25, 2017, the undersigned magistrate judge issued a Report and Recommendation denying OmniVision's motion to transfer and granting-in-part OmniVision's Rule 12(b)(6) motion to dismiss. (D.I. 39) Specifically, the court concluded that Collabo sufficiently pleaded a claim for indirect infringement occurring after the complaint was served, but did not adequately plead a claim for indirect infringement based on pre-filing conduct. (*Id.* at 18) On February 14, 2017, the district judge adopted the Report and Recommendation. (D.I. 42)

4. Collabo served its second set of requests for production on February 2, 2017. (D.I. 106, Ex. A) The second set of requests for production included requests relating to OmniVision's foreign sales of the Accused Products.[1] (*Id.* at 14-16) OmniVision objected to

---

[1] The term "Accused Products," as used in this Memorandum Order, is defined in a manner consistent with the definition of the term set forth in Collabo's discovery requests:

> The term "ACCUSED PRODUCTS" refers to (1) all YOUR products accused in Plaintiff's First Amended Complaint [D.I. 14] of infringing any of the PATENTS-IN-SUIT; (2) all YOUR products identified in Plaintiffs' (*sic*) preliminary disclosures submitted pursuant to Paragraph 1(c)(2) of the Court's Scheduling Order and all supplements thereto; (3) all YOUR products identified in Plaintiffs' initial infringement contentions submitted pursuant to Paragraph 1(c)(5) of the Court's Scheduling Order and all supplements thereto; (4) all YOUR products identified in Plaintiff's final infringement contentions submitted pursuant to Paragraph 1(f)(2) of the Court's Scheduling Order and all supplements thereto; (5) all supplements and/or amendments to the foregoing; and (6) all reasonably similar products.

2

Collabo's requests pertaining to foreign sales data, but did not represent that it was withholding any documents responsive to the topics. (D.I. 106, Ex. B at 39-54) Instead, OmniVision represented that it produced data regarding each entity that imports, sells, offers to sell, tests, installs, or exports the Accused Products in or from the United States.

5. On February 21, 2017, Collabo served its second set of interrogatories, which included interrogatories relating to OmniVision's foreign sales of the Accused Products and knowledge regarding the end products incorporating the Accused Products. (D.I. 106, Ex. C at 8-11) OmniVision's responses to the second set of interrogatories included standard objections to the interrogatories, but represented that OmniVision would produce and identify non-privileged documents sufficient to identify United States distributor(s) of the Accused Products and United States sales figures for the Accused Products. (*Id.*, Ex. D at 9-10, 14-23)

6. On May 31, 2017, OmniVision filed its answer to the amended complaint, asserting the affirmative defense of invalidity as to each patent-in-suit under 35 U.S.C. §§ 101, 102, 103, and/or 112. (D.I. 67 at 6)

7. The court held a discovery dispute hearing on September 25, 2017 to address, among other issues, the purported deficiencies in OmniVision's production of foreign sales discovery. (9/25/17 Tr. at 111:6-16, 126:20-128:1) During the hearing, the court ordered the parties to meet and confer on a supplemental briefing schedule to address the issue of worldwide sales in greater detail. (*Id.* at 127:2-5) On October 18, 2017, the parties filed a stipulated briefing schedule regarding foreign sales discovery and commenced briefing on the issue. (D.I. 105; D.I. 106)

---

(D.I. 106, Ex. A at 2; Ex. C at 2)

8. The court held a discovery mediation conference on October 25, 2017, and requested an oral argument regarding Collabo's motion to compel foreign sales discovery. (10/3/17 Oral Order; 10/25/17 Oral Order) The court held a hearing on the motion to compel on November 15, 2017. (11/15/17 Tr.)

9. On April 17, 2018, OmniVision produced Mr. Ray Cisneros as a 30(b)(6) witness designated to answer topics regarding OmniVision's North America sales team, sales forecasts, and interactions with its customers located in the United States. (D.I. 199, Ex. A) Collabo moved to supplement the record on May 2, 2018 based on purported revelations made in Mr. Cisneros' deposition testimony. (D.I. 198) The court held a teleconference regarding the supplementation to the record on May 9, 2018. (5/9/18 Tr.)

10. **Legal standard.** Rule 26 provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). A party may move for an order compelling discovery pursuant to Rule 37. Generally, a party moving to compel discovery bears the burden of demonstrating the relevance of the requested information. *See Delaware Display Group LLC v. Lenovo Group Ltd.*, C.A. Nos. 13-2108-RGA, 13-2109-RGA, 13-2122-RGA, 2016 WL 720977, at *2 (D. Del. Feb. 23, 2016) (citing *Inventio AG v. TyssenKrupp Elevator Am. Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009)). However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment.

4

**11. Analysis.** Collabo moves to compel the production of foreign sales data to support its claim for induced infringement,[2] which is based on its theory that OmniVision sold the Accused Products to customers outside the United States with knowledge of the patents-in-suit and the specific intent that the customers would incorporate the Accused Products into their end products. (D.I. 106 at 1) Collabo also asserts that the foreign sales discovery is relevant to OmniVision's obviousness defense and Collabo's opinion as to a hypothetical negotiation for its damages calculation. (*Id.*) In addition, Collabo challenges OmniVision's characterization of the documents as pertaining to "foreign" sales. (*Id.*)

**12.** Collabo originally moved to compel OmniVision to produce foreign sales data in response to the categories of documents and information sought in its requests for production[3] and interrogatories.[4] In its recent supplementation, Collabo identified certain categories of

---

[2] It is undisputed that Collabo's amended complaint asserts a cause of action for induced infringement. (D.I. 14 at ¶¶ 12, 18, 25, 32, 39, 41, 48, 50, & 55(A); D.I. 39 at 18) To prove induced infringement under 35 U.S.C. § 271(b), "the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted). The law is well-established that "[e]ven indirect infringement, which can encompass conduct occurring elsewhere, requires underlying direct infringement in the United States." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) (internal citations omitted).

[3] Collabo moves to compel OmniVision to respond to requests for production 39, 40, 47, and 49. These requests include discovery regarding: (39) OmniVision's relationship with the entities that import, sell, offer to sell, test, install, connect, repair, consult, maintain, and/or advise customers in connection with the Accused Products, or export the Accused Products from the United States; (40) all sales, revenues, income, profits, and the associated market share for the Accused Products realized from the sale within the United States or exported from the United States; (47) the activities that occurred from, to, or within the United States related to making, using, selling, and/or offering for sale any of the Accused Products where OmniVision has characterized the sale as foreign; and (49) user instructions and manuals that were sent to third parties, including suppliers, original equipment manufacturers, customers, and end-users. (D.I. 106, Ex. A at 14-16)

[4] Collabo moves to compel OmniVision to respond to interrogatories 7, 11, 12, and 15. These requests seek discovery regarding: (7) the identity of each entity and all persons with knowledge that import, sell, offer to sell, test, install, connect, repair, consult, maintain, and/or advise

5

documents with greater precision, but did not directly associate them with specific requests for production or interrogatories. (D.I. 198) These categories include forecasts, design win revenue, purchase orders, quotes, and supporting documentation including U.S. customer designation of authorized purchasers. (*Id.*) Collabo suggests that the categories of documents included in its supplemental submission following the 30(b)(6) deposition of Mr. Cisneros contradict OmniVision's representations that the sales documents being withheld are related to "foreign" sales. (*Id.* at 1)

13.     For the reasons set forth below, the court grants-in-part Collabo's request to compel OmniVision to produce foreign sales data for the time period between the filing of the instant litigation on March 29, 2016 and the present, in accordance with the court's January 25, 2017 Report and Recommendation.[5] Specifically, to the extent not already produced,

---

customers in connection with Accused Products in the United States, or export the Accused Products from the United States; (11) facts and information related to surveys, evaluations, investigations, assessments, and/or analysis related to customer preferences and/or drivers of commercial success related to the Accused Products; (12) on a monthly, quarterly, and yearly basis, all sales, revenues, income, profits, and the associated market share for the Accused Products realized from the sale within the United States, or export from the United States, of such device, system, or product, and the costs attributable to such device, system, or product; and (15) every entity involved with the design, manufacturing, marketing, and sale of the Accused Products. (D.I. 106, Ex. C at 8-11)

[5] During the May 9, 2018 teleconference, Collabo suggested that whether OmniVision had pre-suit knowledge of the patents-in-suit remains unknown, citing Collabo's purported communications with OmniVision two years prior to commencement of this litigation regarding potential licensing of the patented technology. However, Collabo previously denied asserting causes of action for pre-suit indirect infringement in its briefing on OmniVision's motion to dismiss the amended complaint. (D.I. 21 at 1-3) The court's subsequent Report and Recommendation on the motion to dismiss expressly relied on the fact that "Collabo limits its cause of action for indirect infringement to post-litigation conduct" in recommending that the court "grant-in-part the motion to dismiss to the extent that Collabo's amended complaint could be construed to assert causes of action for indirect infringement based on pre-filing conduct." (D.I. 39 at 18) No objections were filed in response to the Report and Recommendation, which was adopted by the district judge in an order entered February 14, 2017. (D.I. 42) In view of the foregoing, discovery from the pre-litigation period, which falls outside the scope of Collabo's

OmniVision shall produce summary data of gross foreign sales and revenue, as well as a sampling of the documents underlying the summary data, for the relevant time period. The production should include invoices, purchase orders, shipping documents, and emails or communications with customers.

**14.** The discovery requested by Collabo is directed to revealing the nature of OmniVision's communications and collaboration with third party sellers of end products in the United States, which is relevant to establishing OmniVision's alleged intent to induce infringement of the patents-in-suit. Emails, manuals, technical support documents, warranties, marking documents, shipping documents, indemnity agreements, and design documents are relevant to determining whether OmniVision specifically intended to encourage its customers to sell the allegedly infringing Accused Products in the United States despite its knowledge of the patents-in-suit. *See SEB S.A. v. Montgomery Ward Co., Inc.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) (finding that the record showed an intent to sell the accused products directly into the United States where the accused products were affixed with U.S. trademarks, manufactured with North American electrical fittings, and delivered to U.S. destinations).

**15.** Purchase orders are also relevant to a determination of which sales may properly be categorized as "foreign" and, therefore, outside the scope of 35 U.S.C. § 271, for purposes of establishing whether Collabo satisfies the direct infringement requirement on a claim for induced infringement. OmniVision indicates that representative U.S. purchase orders have already been produced. (D.I. 200 at 3) Production of all U.S. purchase orders underlying the spreadsheet data is unwarranted at this time given Collabo's focus on foreign sales. Moreover, OmniVision

---

amended pleading and this court's rulings, is not proportional to the needs of the case under Rule 26(b).

indicates that production of all purchase orders would result in the burden of collecting, processing, and producing hundreds of thousands of documents. (*Id.*) Consequently, OmniVision shall produce a representative sampling of one hundred (100) purchase orders from purportedly foreign sales, from the relevant time period of March 29, 2016 to the present, thereby giving Collabo the opportunity to independently verify OmniVision's representations that the sales are foreign.

16. The other categories of documents recently requested by Collabo in its supplemental submission are not equally probative of the inquiry regarding whether certain activities are foreign. Specifically, documents reflecting "design wins" from U.S. customers, as well as supply or framework agreements, forecasts, quotations, estimates, general business agreements, and price negotiations are not equivalent to a sale or offer to sell, and do not result in a binding agreement to buy or sell a product. (D.I. 201 at ¶¶ 7-8; Ex. 6 at 246:14-247:4) Unlike the purchase orders, these documents do not contain the essential, binding terms of a buy/sell agreement. *See Tex. Advanced Optoelectronic Solutions, Inc. v. Renesas Elecs. Am., Inc.*, 2018 WL 2011463, at *20 (Fed. Cir. May 1, 2018) (describing the lack of specific evidence of contractual commitments for specific quantities of the accused product necessary to establish as a matter of law that sales occurred abroad); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1379 (Fed. Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 1923 (2016) (holding that the defendant's third-party domestic pricing negotiations and general business agreements did not amount to binding agreements to buy and sell a specific product).

17. Gross foreign sales and revenue data is relevant to the reasonable royalty calculation because the number of non-U.S. sales of the Accused Products imported into the United States by third parties is indicative of the extent of infringement. *See Novartis Pharms.*

8

*Corp. v. Abbott Labs.*, 203 F.R.D. 159, 164 (D. Del. 2001); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 900 F. Supp. 2d 1160, 1163 (D. Nev. Oct. 25, 2012) (denying motion in limine after concluding that sales of accused products imported into the U.S. by third parties were relevant to induced infringement claim and royalty base calculation).

18. Additionally, the discovery permitted in the preceding paragraphs is relevant to Collabo's efforts to rebut OmniVision's affirmative defense of obviousness by demonstrating the commercial success of the Accused Products. Specifically, if the requested discovery establishes substantial worldwide commercial success achieved by the Accused Products, this discovery would support Collabo's assertion of non-obviousness. *See 3Com Corp. v. D-Link Sys., Inc.*, 2007 WL 949596, at *4 (N.D. Cal. Mar. 27, 2007) (analyzing whether the product embodying the invention enjoyed commercial success separately from the analysis of a nexus between commercial success and the patented invention).

19. OmniVision challenges the proportionality of the requested discovery by questioning the substantive merits of Collabo's direct and induced infringement claims, reiterating that OmniVision cannot be held liable under United States patent law for extraterritorial activity. According to OmniVision, the perceived weaknesses in Collabo's infringement claims render the requested discovery irrelevant and disproportionate to the needs of the case under Rule 26. (D.I. 109 at 5-11) However, Collabo has presented evidence suggesting that the Accused Products are incorporated into end products sold in the United States (D.I. 115, Exs. D-F), and OmniVision does not dispute knowing generally that its technology is incorporated into end products sold in the United States (D.I. 109 at 5).

20. Although "[m]ere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a),"

*Ziptronix, Inc. v. OmniVision Techs., Inc.*, 71 F. Supp. 3d 1090, 1092-93 (N.D. Cal. 2014), Collabo should be given the opportunity to explore the nature of these sales and OmniVision's relationships with its customers through discovery. OmniVision has characterized over 99% of its sales of the Accused Products as foreign sales, and Collabo cannot properly vet OmniVision's characterization of these sales as foreign without access to the discovery permitted herein.[6] (D.I. 111, Ex. 1 at 10; Ex. 4 at 134:2-3) The Federal Circuit has rejected a "mechanical" test regarding the location of sales for purposes of § 271, and has characterized the issue as "whether the defendant's actions could be construed by a reasonable jury to constitute a sale or offer to sell in the United States." *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1370 (Fed. Cir. 2008).

21. Discovery on the fact-intensive issue of foreign sales should not be precluded at this stage of the proceedings to obtain a ruling that is effectively case dispositive. The elimination of potential damages from sales which OmniVision contends are extraterritorial is not a matter for resolution at the fact discovery stage. Three cases inform the court's analysis in fashioning a resolution: *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371 (Fed. Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 1923; *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015); and *Texas Advanced Optoelectronic*

---

[6] OmniVision relies on *Finjan, Inc. v. Blue Coat Sys.*, 2014 WL 5321095 (N.D. Cal. Oct. 17, 2014) for the proposition that discovery on foreign sales is not relevant because a defendant cannot be held liable under United States patent law for extraterritorial activity. Although the precise circumstances before the court in *Finjan* are not apparent from the ruling due to the cursory summary of the facts and nature of the dispute, it does not appear that the fact-intensive issue of what constitutes a foreign sale was before the court. Rather, the realm of foreign sales appears to have been established or otherwise undisputed. *Id.* at *2. In contrast, Collabo disputes OmniVision's characterization of 99% of its sales as foreign. Consequently, the requested discovery is relevant to a determination of what constitutes a foreign sale in the present case.

*Solutions, Inc. v. Renesas Electronics America, Inc.*, 2018 WL 2011463 (Fed. Cir. May 1, 2018) ("*TAOS*").

22. In *Halo*, the Federal Circuit affirmed a grant of summary judgment, finding the facts undisputed that there was no sale or offer to sell in the United States. 769 F.3d at 1377-81. The facts relevant to the court's analysis established that manufacturing and delivery of the accused products occurred outside of the United States, and the defendant's domestic pricing negotiations with a third party, which were conducted on a quarterly basis and directed to specific producers, were not binding and did not "constitute a firm agreement to buy and sell." *Id.* at 1379. In addition, the defendant and the third party had a "general business agreement" that "did not refer to, and was not a contract to sell, any specific product." *Id.* Thus, Halo presented no evidence of the location or formation of relevant binding contracts to sell, warranting judgment as a matter of law that there was no sale or offer to sell in the United States. *Id.* at 1379-80.

23. Similarly, in *TAOS*, the Federal Circuit considered whether the defendant sold or offered to sell the patented invention to Apple in the United States. 2018 WL 2011463, at *18-20. TAOS presented evidence of domestic purchase orders of silicon wafers, which were possible components of the accused products. *Id.* at *19. In addition, TAOS provided evidence that the defendant and Apple were U.S. companies, and Apple sold its iPhone 3G product, which included the accused products, in the United States. *Id.* Other evidence relied upon by TAOS in support of its contention that sales or offers to sell occurred in the United States included the following: (1) the defendant's unsigned template for a purchase order that did not identify any particular parties or products, (2) the defendant's internal emails, (3) other documents referring to a contract with Apple without specifying any terms or evidence that it had been executed, (4)

an email stating that the defendant will ship products to Apple pursuant to an order placed by Apple, without specifying shipping details or where the order was executed, (5) a document concerning business with Apple containing unexplained charts and graphs and unexplained references to contracts and products, (6) another series of unexplained charts, and (7) emails between the defendant and Apple regarding pricing negotiations and Apple's testing of the defendant's products, without specifying the locations of such activities. *Id.* On this factual record, the court found no basis to disturb the grant of summary judgment for exclusion of the defendant's sales, found to be extraterritorial, in excess of 1.2% of the accused units which the evidence showed were sold domestically. *Id.* at *20.

24. In reaching its holding in *TAOS*, the Federal Circuit distinguished *Carnegie Mellon*. In *Carnegie Mellon*, "there was some evidence suggesting that specific contractual commitments for specific volumes of chips [accused products] were made in the United States." 807 F.3d at 1309. Moreover, the Federal Circuit emphasized that the defendant in *Carnegie Mellon* had the opportunity to present evidence at trial that the sales only took place abroad but "simply failed to do so." *Id.*

25. The Federal Circuit's rulings in the three guiding cases summarized at ¶¶ 21-24, *supra*, establish that fact discovery was permitted on the issue of extraterritoriality. This fact discovery focused upon the defendants' various business transactions, including purchase orders, contract negotiations, third-party testing of the defendant's products, and sales-related communications, to create a record to support a meaningful and informed decision at the summary judgment stage on whether to carve out damages from extraterritorial sales.

26. Consequently, the court finds it appropriate and necessary to provide the plaintiff with the means to access discovery that is focused and targeted[7] to the development of the kind of factual record described by the Federal Circuit in *Halo, Carnegie Mellon,* and *TAOS*. The discovery permitted in this Memorandum Order will provide the requisite foundation for the parties and the court to address the damages issues it anticipates will resurface at the dispositive motion stage and/or at trial.

27. OmniVision contends that the issues presently before the court were previously adjudicated by the Northern District of California in *Ziptronix, Inc. v. OmniVision Techs., Inc.* (D.I. 109 at 6, 15; D.I. 111, Ex. 1 at 13) The *Ziptronix* case was an unpublished ruling on summary judgment that reached the merits of the plaintiff's causes of action for direct and indirect infringement. (D.I. 111, Ex. 1) The court granted summary judgment of non-infringement in favor of OmniVision after concluding that the disputed sales were foreign sales, falling outside the scope of United States patent law. (*Id.* at 10-11) According to OmniVision, its business practices as described in the *Ziptronix* decision are consistent with the 30(b)(6) testimony offered by OmniVision's deponent, Anson Chan, in the present litigation. (11/15/17 Tr. at 37:17-39:11) Accordingly, OmniVision suggests that the irrelevance of foreign sales discovery established by the *Ziptronix* court should apply equally to the instant matter.

28. The court declines to extend the factual findings in the *Ziptronix* case to the present matter. The procedural posture of the *Ziptronix* case, resolved on summary judgment, differs substantially from the discovery dispute presently before the court in this litigation.

---

[7] In conducting the Rule 26 analysis, the court has fashioned a remedy intended to permit meaningful discovery on extraterritorial sales to go forward, while narrowing the relief to exclude the types of documents found insufficient by the Federal Circuit in *Halo, Carnegie Mellon,* and *TAOS*.

There, the Northern District of California evaluated the evidence on the record, derived from the discovery process, and concluded that the evidence was inadequate to establish a sale or offer to sell in the United States.[8] (D.I. 111, Ex. 1 at 9-11) Redactions in the copy of the *Ziptronix* decision provided by OmniVision make it difficult for the court to verify the factual similarities between *Ziptronix* and the present case. Purported consistencies between the description of OmniVision's business model set forth in the *Ziptronix* decision and the 30(b)(6) deposition testimony of Mr. Chan are not sufficient to support the factual findings sought by OmniVision in the absence of the document discovery requested by Collabo. In ruling on the present discovery dispute under Rule 26, the court declines to make factual findings based on the 30(b)(6) testimony of Mr. Chan and a judicial decision from another jurisdiction involving the same defendant.

29.  OmniVision additionally asserts that much of the discovery requested by Collabo, particularly with respect to data illustrating the number of Accused Products that are incorporated into end products ultimately sold in the United States, is not information that is tracked by OmniVision in its Oracle database and is more likely to be obtained from the third party customers of OmniVision. (D.I. 109 at 11; D.I. 111, Ex. 4 at 115:13-116:6) Although OmniVision cannot be compelled to produce that which it does not possess, Collabo's discovery requests more broadly seek information regarding OmniVision's relationships with its customers, which may shed light on this subject. ▐▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[8] Another case relied upon by OmniVision, *The California Institute of Technology v. Broadcom Ltd.*, denied the plaintiff's motion to compel further discovery after observing that the defendants already produced spreadsheets and backup information regarding worldwide sales. (D.I. 111, Ex. 6 at 5)

14

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Consequently, the facts presently before the court are distinguishable from those set forth in *The California Institute of Technology v. Broadcom Ltd.*, in which the Central District of California found no evidence in the record suggesting that the defendant tracked information about end products containing accused products that are sold in the United States. (D.I. 111, Ex. 6)

30. Balancing the relevance of the requested discovery against the burden on OmniVision to produce it, the court concludes that production of the discovery described above is proportional to the needs of the case and does not impose an undue burden on OmniVision. OmniVision's 30(b)(6) witness, Anson Chan, testified that producing an Excel spreadsheet summarizing gross foreign sales and revenue data stored in the Oracle database would take up to a week to produce, using the same process used to produce information on United States sales. (D.I. 115, Ex. A at 69:17-70:23) Transferring gross foreign sales and revenue information from OmniVision's Oracle database to an Excel spreadsheet is not overly burdensome. With respect to the underlying foreign sales documents, OmniVision represents that the production would total hundreds of thousands of documents, but makes no representations as to how long it would take to collect and produce the documents, how the documents are stored, or whether it would be difficult to search for the files. (D.I. 109 at 13; 11/15/17 Tr. at 30:2-17) The court has attempted to narrow the scope of this category of documents in an effort to reduce the burden to OmniVision. OmniVision has failed to establish that the burden of producing the discovery ordered by the court is disproportionate to the needs of the case.

15

31.     **Conclusion.** In view of the foregoing analysis, Collabo's motion to compel OmniVision to produce foreign sales data is granted-in-part for the time period between the filing of the instant litigation on March 29, 2016 and the present. Specifically, Collabo's motion is granted with respect to summary data of gross foreign sales and revenue, invoices, a representative sampling of one hundred (100) purportedly foreign purchase orders, shipping documents, emails or communications with customers, manuals, technical support documents, warranties, marking documents, shipping documents, indemnity agreements, and design documents. OmniVision is to produce the documents on or before **June 15, 2018**. Collabo's motion to compel is denied with respect to documents falling outside the designated time period, as well as documents reflecting "design wins" from U.S. customers, supply or framework agreements, forecasts, quotations, estimates, general business agreements, and price negotiations.

32.     Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties should jointly submit a proposed redacted version by no later than **May 31, 2018**. The court will subsequently issue a publicly available version of its Memorandum Order.

33.     This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**34.**     The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge